The last case for argument today is appeal number 22-2182, Graves v. U.S. Counsel for Appellant, Mr. Dunn. Yes, Your Honor. You have reserved five minutes of rebuttal time, correct? Yes, Your Honor. You may proceed. Good morning. May it please the Court? Counsel, my name is Blair Dunn and I represent the appellants, the Graveses in this matter. I'd like to jump right into what I think the legal issue in this case is, which is ultimately what the claims court did with the Martinez line of cases, the Mendez line of cases. The court will note that in the opinion of the claims court, she jumps to the inherently unknowable prong of those cases, but doesn't look at the mixed signals. And I think that that's, if I were to drive at the crux right off the bat, that's where I would go to point to one of the reasons why the court got ahead of itself, the claims court got ahead of itself. Ultimately, all of what was in the record on a preponderance, and as a trial lawyer I love to use the Kleenex analogy when I'm talking to a jury, I think that it's applicable here, that there's a preponderance, it's just that 51% rough mark where the Graveses put enough at issue to show that the government had either concealed, intentionally concealed what they were doing, or they had, the government changed their mind along the way. Do you agree that any alleged taking occurred no later than 2012? No, I don't. Tell me why. I don't think we can know when the government decided to take the property. Certainly in 2012, what we have put at issue is that they were telling the Graveses that they weren't taking the property. Now, I don't know if the government was telling the truth. That's part of the issue that we have here. What is it that you rely on for the proposition that they were not telling the Graveses that they were, well, we say, it sort of loads the dice to say taking the property, but the government lays out in 2009 and subsequently in 2012 where they modified the easement, that they lay out what the rights of their respective parties are, and what struck me is fairly extensive and fairly clear terms. The right of use of the Graves upon paying a fee, and the right on the part of the Forest Service to use the road, and to allow others to use the road. That sets the starting point, let's say, for the respective rights of the party. I don't see that anything that happened in 2012 modified that in a substantial way, and that we're still operating under the regime that was created in 2012, right? I'm not seeing how anything changed in a way that either they would have been misled in 2012, or that something happened later that would change that. Well, I think that that's kind of the issue that the District, I'm sorry, the Court of Claims ran into. I think that the regime, as the Court aptly puts it, started well before 2009 and 2012, and the regime that the Graves were operating under is that they created this road. This isn't a road that the Forest Service created with the Forest Reservation. This is a road that ultimately predates the forest. And so if that's the regime for, let's just say, 110 years, 115 years, and then the Forest Service comes in to reasonably regulate, as they're allowed to do under FLIPMA and the ANWR cases, and they say, OK, well, yeah, it's your road, but we're going to require a special use permit. And I argued the Martin case where this was actually an issue as well. In that situation, absolutely the Graves' understood that they were subject to a reasonable regulation by the Forest Service. Including allowing the Forest Service and the Foreign Service's licensees to use the road. Exactly. So why isn't that, when that happened, why wasn't that the point at which they should have said, wait, wait, wait, that's taken? Because FLIPMA and the Unconstitutional Conditions Doctrine says that they don't have to surrender their interest in that road in order to allow that reasonable regulation to occur. They're not exclusive. They have the right to use the road. They don't have an exclusive right, as in a right to exclude others from use of the road, right? Right. But a property interest in an easement is not necessarily an exclusionary interest. It's a right of use. It's a use of property right. They still have that, though, don't they? Well, no, according to the Forest Service, and this is where... They don't have an easement to use the road? They don't. They have their special use permit easement to use the road. That's correct. They do have that. They don't have a property interest, which is what the Forest Service told them finally in 2016. But the easement is a property interest. It's not a fee simple interest, but it's a property interest. It is, but it's not the ownership interest. And that gets to the Unconstitutional Doctrine. They didn't have the ownership interest as of 2009. No, I disagree with that, Your Honor. Well, when did... What was the indication in either the 2009 or the 2012 document that indicates that they still had a property right, as in fee right, to the road? Because by law, FLTMA says that that property right is not extinguished. An RS-2477 road is not extinguished by a later FLTMA permit, and that's explicit in the statute. And why didn't they raise that at the time of the... 2009 and 2012? We allege they did. We allege that the understanding, at least the verbal understanding, between them and the Forest Service in 2009, 2012, and up until the Forest Service finally told them in 2016 this wasn't the case, and well before that was that they had a property interest. But you could claim they didn't understand the actual language of the easements when they were executing them? Is that part of your contention? No, I don't think so. I think that they had an understanding that the document said one thing, and the Forest Service verbally says, we're not taking your property interest, and they relied on the government telling them the truth when the government says, go ahead and sign this, this is what this says, FLTMA says that we don't actually extinguish your property interest, so go ahead and sign it and we're not actually taking it from you. I think you're allowed to rely on the government at that point to be telling the truth, and that goes to the crux of this issue. The easement says that the road is owned by the United States, correct? The easement says that the road is owned by the United States, and then the Forest Service repeatedly told them, well, that's just what the form says, go ahead and sign this. And you're saying when we apply the objective standard of whether they knew or should have known that they didn't own the road, that clock did not start running upon the signing, I think as far back as 1996, but certainly 2012, of a document that says, yes, the government owns it. They shouldn't even have known at that point that they may have a claim. Right, because it's also an objective fact, taken as true at this stage, that they were told that even though it says that, that's not the way the government's applying it and not extinguishing their rights. That's ultimately what we're hearing. What about the sign on the road and the fact that they were made to pay a usage fee and that they had no ability to stop other people from using the road? None of that should have led them to think that they did not own the road? No, that's consistent with reasonable regulation under a special use permit, whether or not they've given up their rights. This isn't the only case where the Forest Service does this. There are several cases. The Martin case was ultimately, though it was dismissed as not right, we were in the same position that there was an argument that the Forest Service had taken the Martins and several other people's roads on another forest in the west, and our argument was that they were taking that property by requiring the special use permit. And this court said, no, you don't have to. The special use permit isn't actually a taking. You can't consider it a taking because that's just reasonable regulation. So if we're going to use Martin as a standard for when they should have been noticed, the taking of a special use permit is not a taking. Do you agree that the 2012 easement differs only slightly from the 1996 easement that was executed? I agree, and I think that supports the idea that this has been a regime where they were allowed to retain their property interest. And on the explicit statements of the government, it goes well beyond 2009 even. It goes way back. I think that's the issue. It's their road. Just out of curiosity, this road, how long is this road? Very short, like less than 10 miles. It's not a very long stretch of road. Does anybody, they have property, I take it, at the end of the road, and the road has access to 250 Forest Road, 252, I think, right? Yes, sir. And does anybody else have property on that road? There is another family with a property that is also now served by that road. I see. How long has that family had property there? I don't know how long the property has been there, how long this family has had it. I know that there were recent improvements, and that was part of the issue as to why there was some tension between the Forest Service and the Graves' is that ultimately the road was damaged, and the agreement in conjunction with all this was that the Forest Service was going to do some, because they were going to reasonably regulate, they were also going to reasonably maintain and do some things with gates and things like that, and close it at certain times of the year so the road wasn't destroyed. That didn't happen, and that's what led to a lot of the tension between the Graves' and the Forest Service. What is the concealment evidence that you allege? Where can I see the allegation of concealment? Specifically, it was brought to the district court's attention in the transcript. Okay, but in the complaint. I have to credit the well-pledged factual allegations in the complaint. So where do you allege concealment? In the complaint at page 19, paragraph... Is that appendix 19 now? Or... Oh, I'm sorry. I don't think those are actually corresponding. I'm sorry. I think I might have the wrong date. Okay. If you tell me the paragraph, that's fine. I'm looking at a complaint for just compensation at appendix 18. I'm assuming that's the operative... Paragraph 19 on page 7 of the complaint. Okay, and I'm looking at that. It's page 824 in our appendix. What is the allegation in here that something material was concealed from your clients? Well, that gets to the interesting timing of this particular situation. So if the Forest Service intended to take this property by the 2009 or the 2012... Let's just use the 2012. If I can't get there, I can't get to 16, I'm sure, or to 9, I mean. If the Forest Service said, well, take this permit, they were actually intending to extinguish the property interest, not just the use interest in the property, and they went beyond that and they didn't tell the Graves that that's what they were doing. They're concealing a material fact of, well, hey, we're taking this by virtue of this permit. Are you saying the government had an affirmative obligation to tell your clients the legal impact of what they were signing? If they were intending to condemn it by virtue of this permit, yes. If I thought instead that you needed to allege, at least, that the government did something affirmatively misleading, have you alleged that? No, because it wasn't necessarily a positive concealment in that regard. It was just an omission rather than a commission. Just one quick, if I might. You mentioned unconstitutional conditions. I think that was part of your claim originally, but that's not on appeal before us, is it? We brought it up in the district court. I'm sorry, the Court of Claims does discuss the Koontz case, and I think that that is here. So ultimately, again, if in 2012 the government is going to take this property and they're exacting as a fee the property interest in the road in order to get the special use permit, then the unconstitutional doctrine takes it. Have you appealed the dismissal of an unconstitutional condition claim? I don't think we had to. It kind of gets to the idea, and the government raises in their brief, this idea that there is no compensable property interest, but the Court of Claims did not get to that specific point. In fact, the Court of Claims specifically concerned about it. The answer to Judge Start's question is no. I'm sorry, I misunderstood the question. You did not appeal it, but your contention is you didn't have to appeal it. Essentially, yes. I'm sorry. Help me with, you keep referring to their property interest. What is your definition of the property interest in the road that was taken? So as part of the bundle of sticks, there are use of fruct rights to the use of property. The use of the road. Right. Is that the property right that was taken? That's right. But not the exclusive use of the road? No, because necessarily a dominant estate is not exclusive. Right? The property right that you say the government took was their right to use the road while allowing others to use the road as well. That's right. Why do they not still have exactly that property right? Because all they have now is a revocable permit. They don't have that. Permits are not the same thing as a right, obviously. So they don't have the right to require the government to do that. So the government could then cut them off from the rest of their property, and they no longer have a right. They have the ability, they still have the permit. But as long as the permit is in effect, they really haven't had any derogation of their property right, which you've defined as the non-exclusive right to use the road. Not in a physical sense, but certainly in a legal document paper sense. It's essentially an extinguishment of a paper right. This is the issue with rucifructs like water rights and those things. The government has canceled out their paper right to use that, even though they still have the physical ability to use that right because of the permit. Okay. Mr. Peterson, you may proceed. Thank you, Your Honors. May it please the Court. My name is Ezekiel Peterson here on behalf of the United States. I'd like to start with Judge Stark, what you were alluding to, as to what is actually in or not in the complaint here. And there are no allegations in the complaint as to any contemporaneous extrinsic statements made by the government in 2012 when the grave signed the easement that would support any finding of concealment. So they can't proceed on that purely on the basis of attorney proffer because there's nothing in the record about concealment in 2012. What about their suggestion, at least today, that the government was under an affirmative obligation to disclose something to them, perhaps, about the impact of the rights they were giving away when they signed the easement? I think all the information was clear from the text of the easement. And the easement itself could not have actually extinguished any underlying property rights because the easement was promulgated under FLTMA, the Federal Lands Policy Management Act, which under that statute preserves preexisting rights. So insofar as there are any preexisting rights, those rights still exist and were not extinguished by that easement. I think there's been some confusion here about what the graves are claiming that the taking actually is because in the complaint it certainly seems that they're asserting an exclusive right to use this right-of-way or use this easement to access this property, exclude others, and not have to pay an annual use fee. But now they're saying that they just have the right to use that and that that right can be regulated. We agree that that right can be regulated, and we think that if that is the case, then they haven't actually lost anything here, I suppose. Well, Mr. Dunn says, well, what they've lost is they've gone from having an actual right to the easement with its conditions of non-exclusive right to having a permit right, which is subject to the extinction of the permit. So what do you say to that, Ari? I think any conditions that they're complaining about now in the permit were clearly stated in the permit in 2012 and as such are time barred by the jurisdictional six-year statute of limitations. All the events that were... Do you agree, just to make sure I understand the argument you made about Flipma, previously, would you agree that the Forest Service cannot now simply revoke the permit on its whim and say, we gave you this permit up to now, but we're terminating it, you can't use the road? I think there are conditions in the permit that possibly address that. We certainly agree that inholders in the forest have the right to access their property subject to reasonable regulation. We don't think that that has been taken away from the graves here. But when... Add to the end of time, or just as long as the permit is in place? I think under the general mining laws of the late 1800s that right is not contingent on the specific permit, but the terms of that permit can still be negotiated  like there was here. Insofar as their complaint alleges, which we think it does, that they have an exclusive right to use this road, that was clearly contradicted by the plain terms of the 2012 Flipma easement, and the claim would have accrued at that point. Like the consent decree in San Carlos Apache Tribe, the 2012 easement fixed the government's alleged liability at that date, and that is the date for claim accrual. So they argue that the accrual suspension rule should excuse their untimely complaint, but there are problems with that argument. First, as I mentioned, nothing in their complaint alleges that the Forest Service actually concealed any requirements to pay an annual use fee and to let other land... They seem to contend that with respect to some of the statements that were made to them, they basically somehow would override or contradict the plain language of the easements. Can you respond to that? We think that even if that was in the record, it wouldn't be the case, because the statute of limitations is judged from an objective perspective, and looking at the objective language of the 2012 Flipma easement, it's very clear that the conditions that they complain about in their complaint were imposed clearly on their right to use the road. The right to use the road was clearly regulated at that point. As I mentioned, if their complaint is instead that they didn't realize that their underlying property interest had been taken until 2016 because of a single Forest Service employee's statement at that point, that argument fails primarily because the Forest Service could not have extinguished any underlying private right through the 2012 easement, and also because a single statement by a Forest Service employee cannot by itself constitute a taking, and that's what this court said in the Katzen case. A government employee's assertion of ownership is not in and of itself a taking, and the government employee here at issue did not have the actual authority to unilaterally impose a taking truly by their statement. What is the difference of substance, other than the change in the amount of the fee, between the 1996 easement and the 2012 easement? Almost nothing, Your Honor. I think there's some minor language changes. There was... Help me out with this because I got lost in the details here, but there was a change, which I take it was provided for in the 1996 easement that it could be converted into a different form of easement, which conversion occurred in 2012. Am I right about that? I don't think that's right, Your Honor. I think the term that you're looking... They used different terms for the two easements, and it wasn't clear to me if there was any substance to the difference. Your Honor, we don't think there is any substance to the difference, and we think that, you know, at the latest, the Graves should have been aware of this regulation, of their right to use the road in 2012, but really they should have been aware of it much prior to that because their immediate predecessor in interest, which is Mr. Graves' father, executed this 1996 easement, which was subject to the exact same terms. Right, and that's... The fact that it was a predecessor in interest who agreed to the easement, if the easements were the same, then the Graves, I gather, took possession of the property subject to the original 1996 easement. Yes, Your Honor. They should have been aware of it really at the point they took possession of the property. This is not a case like Holmes v. United States where, in that case, the government had promised to take certain actions, had conveyed that it had taken those actions, even though there was no way for the plaintiffs to understand that they actually had not taken those actions. Here, the government's conduct has always been very clear, has been explicitly laid out in these easements since at least 2012, but really going back to 1996. So plaintiff's purported injury was not concealed or inherently unknowable, and now their claim is time-barred. I'd just briefly like to touch on the underlying merits of the property interest at issue here. This Court, in the alternative, could affirm the Court of Federal Claims if it finds that it does have jurisdiction, because the plaintiffs have failed to allege Takings' claim as a matter of law. They allege that their interest was created through Revised Statute 2477, but that statute only granted rights-of-way as to the construction of public highways, not private roads, so private parties do not have private property interests in those public highways. Nor can they allege a cognizable property interest under the general mining laws, because, as I mentioned, those laws establish a statutory right of access, not the right to use any sort of particular right-of-way exclusively to access an inholding. Plaintiffs don't address these issues in their reply brief, but instead argue that the Court isn't even allowed to consider them, but it's well-settled law that this Court may affirm on any ground supported by the record and the law, so long as it will not expand the scope of the relief granted. Unconstitutional conditions? Do we have to be concerned with that? Is that part of the appeal in front of us? No, we don't think it is, but even if it was, any conditions would have been put forth in that 2012 easement or the 1996 easement. So even if the conditions were unconstitutional, it's too late to challenge them? Yes, Your Honor, it's jurisdictionally barred by the statute of limitations. Is it clear, I know I've forgotten the law on this, although I should remember it, but is it clear that the limitations problem is a jurisdictional bar? That's undisputed? That's undisputed, and that's what the Supreme Court said in, I believe, the John R. Sand and Gravel case. John R. Sand and Gravel, okay, yes. Thank you. Ultimately, the plaintiffs used this road to access their property, just like the other landowners that live in the area. In their complaint, at least, they state that they should have the exclusive right to use this road, but that was clearly contradicted by the text of the 2012 easement. So at the very latest, when they signed the 2012 easement, they knew or should have known that they did not have the exclusive right to use this road, and at that point, their claim accrued. The Court of Federal Claims correctly dismissed for lack of subject matter jurisdiction, and unless this Court has any further questions, we ask this Court to affirm. Thank you. Thank you. Any rebuttal? If I might, very quickly. The complaint discusses not an exclusive use. I want to make sure we clear that up. What it discusses is that part of the terms of the permit were that there were times in the year  to the rest of the public so that they didn't tear up the road. That's part of the agreements, verbal, between the Forest Service and the Graves' that were not met, that we're arguing are part of what they lost as part of having their property right is the ability to negotiate that with the Forest Service. And I want to be really very clear. Judge Bryson, you touched on this idea of between 1996 and 2012, the distinction between the permits, and they're substantively probably not all that different, except for one important point. One was a reasonable regulation that recognized that it was a permanent easement. The permanent part of that is very important because ultimately that's a recognition of a property right as a permanent interest in that property until taken away. So to say that the Forest Service hasn't given mixed signals at all here, and the Graves' should have just been able to figure this out, I think today's argument alone goes to show that those mixed signals are there. In 1996, it's a permanent easement. So you're saying the difference is that 1996 was a permanent easement and it was converted into an easement at Sufferance in 2012. Precisely, Your Honor. And I think that's the main point of this, is that when you get down to it, between 1996 at least and 2016, what was the understanding of the Graves' is that they hadn't surrendered a property right. And it was not until 2016 that the Forest Service finally acknowledged that they had taken it. How would the Graves' have known that between that period of time? And that's the question. Can you point us to where in the 1996 easement supports up your statements about the differences between 1996 and 2012? Do you have access to the appendix? I do. I will apologize that was not part of the... I can't give you a page site, Your Honor. I'm sorry. I don't have the full attachments to the complaint with me. Do you have the appendix with you? I have part of the appendix, and I realized I was missing a significant part of it when I got here to D.C. I apologize for that. Well, there is a provision on page 79 of the appendix, number 6 of the 96 easement which says the right to terminate this agreement if the grantor, that's the Forest Service, assumes jurisdiction and control of the road as a forest development road and issues a replacement easement providing only for use of the road. So it sounds as if they're anticipating that one of the rights given to the grantor, the Forest Service, at that point was to convert it into the easement that ultimately arrived in 2012. Correct, Your Honor. In which case, this is only permanent in the sense that it's permanent until the Forest Service decides to convert it. Agreed. And then the Forest Service never gave notice that they were converting it. Instead, what they told them was no, we're just going to change this to a special use permit. We're not going to extinguish your right. And that's what we're saying is that how would they know in 2012 when the Forest Service converted this that they were when they were taking the right when there's the objective fact that the Forest Service told them at that time that that's not what they were doing. But this provision says that at that point if they do convert it, it is into issuing a replacement easement providing only for use of the road. And therefore they're taking what occurred at that point in time. I agree with that. I think that's where the Court's leading. Go ahead. But that's 2012. It is. So you're too late. If the conversion occurs in 2012, you're too late. But for the statements by the Forest Service referenced again in 2016 saying, well, we may have told you that then, but we're telling you now we're taking this. All of which are not alleged. No, we do allege that there was a conversation where the Forest Service employees said that they were taking it now, that it had been taken in 2016. In 2016, that was when the notice was given. No allegations, sorry, that in or around 2012 that something was said to contradict what the plain language of the easement says. Your Honor, other than the Forest Service were saying that the first time that they told them that they were taking it, we have an affirmative statement that the first from the Graves' alleging the complaint that in 2016 was the first time the Forest Service told them. So this gets to your point about whether or not there's an affirmative statement. Thank you. Thank you. This case is taken under submission. That concludes the arguments for today.